UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC SIMON,

                    No. 12-12643

           Plaintiff,           District Judge George Caram Steeh

v.                          Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Eric Simon brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under Title XVI of the Social Security Act.   Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #18] and Plaintiff's Motion for Summary Judgment be DENIED [Docket #17].

## I.   PROCEDURAL HISTORY

Plaintiff applied for SSI on September 25, 2009 alleging disability as of October 1, 1998.  *Docket #16-5* (Tr.113)[1].   Upon initial denial of the claim, Plaintiff requested an administrative hearing, held  on January 24, 2011 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 42).  Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 45-50), as did vocational expert ("VE") Mary Williams (Tr. 52-53).

_____

[1]"Tr." numbers refer to the amended transcript, filed March 11, 2013.  *Docket #16.*

On February 15, 2011, ALJ Sloss found Plaintiff not disabled (Tr. 33).

On May 3, 2012, the Appeals Council declined to review the administrative decision (Tr. 11-15).  Plaintiff filed suit in this Court on June 18, 2012.

## II.  BACKGROUND FACTS

Plaintiff, born October 13, 1958, was 52 at the time of the administrative decision (Tr. 33, 113).  He obtained a GED and received training in maintenance, electronics, and sewing (Tr. 45, 132).  He worked previously as a maintenance worker between 1984 and 1988 before being incarcerated in 1990 (Tr. 128).  He alleges disability as a result of hypertension, diabetes, asthma, Chronic Obstructive Pulmonary Disease ("COPD"), back pain, tendinitis, depression, and anxiety (Tr. 127).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff experienced shoulder, back, and leg discomfort (Tr. 46).  He experienced problems arising from a reclining position due to back pain (Tr. 46).  His shoulder problems began in 1991 and were worsening (Tr. 46).  He experienced leg cramps for the past 15 to 20 years but had not received a diagnosis of lower extremity problems (Tr. 47).  He also experienced chest pains and hypertension (Tr. 47).  He currently received food stamps but no other public assistance (Tr. 46). Plaintiff denied working since 1998 (Tr. 45-46).

Plaintiff admitted that he was able to go shopping, visit friends, and attend church (Tr. 48).  He would spend a typical day reading and watching television (Tr. 48).  He was able to sit for up to 20 minutes before requiring a position change (Tr. 48).  His ability to walk was limited because of leg cramps (Tr. 48).  He was unable to lift more than 15 pounds due to shoulder problems (Tr. 48).  Plaintiff's shoulder pain created periodic sleep disturbances

(Tr. 48-49).

In response to questioning by his attorney, Plaintiff stated that he currently lived in a homeless shelter (Tr. 49).  On occasion, he was unable to complete assigned duties of "clean[ing] up" due to shoulder, back, and leg problems (Tr. 49).  He had been diagnosed with an anxiety disorder and did not enjoy being around other people (Tr. 49).  He experienced memory and concentrational problems (Tr. 49).  Plaintiff received medical treatment from a nearby clinic (Tr. 50).  He used an inhaler twice a day (Tr. 50).  He was currently taking a narcotic medication for back pain (Tr. 50).  He denied the current use of psychotropic medication (Tr. 50).

### B.  Medical Records

#### 1.  Treating Sources[2]

July, 1994 Michigan Department of Corrections ("MDOC") records show that a CT of the abdomen was unremarkable (Tr. 220).  December, 1996 imaging studies of the left knee were negative for abnormalities (Tr. 231).  In February, 1999, Plaintiff was diagnosed with borderline hypertension (Tr. 217).  A May, 2001 imaging study of the right shoulder show mild degenerative changes of the thoracic spine (Tr. 232).

Plaintiff attended counseling sessions between November, 2005 and October, 2006 (Tr. 274).  He reported experiencing depression but showed insight and remorse for his prior actions (Tr. 275).  In April, 2007, Plaintiff sought urgent care for shortness of breath and a cough (Tr. 268).  An examination of his cardiovascular system showed no abnormalities (Tr. 269).  In July, 2007, Plaintiff again received treatment for "non cardiac" chest pain (Tr. 208).

---

[2]Medical records predating the alleged October 1, 1998 onset of disability are included for background purposes only.

-3-

January, 2008 treating notes state that Plaintiff experienced "mild persistent asthma" but did not exhibit other lung problems (Tr. 250, 253). Plaintiff's diabetes mellitus was deemed under "good" control (Tr. 254). The same notes state that he used Tylenol for back and leg pain (Tr. 250). March, 2008 examination notes state that Plaintiff had smoked a pack of cigarettes a day for 30 years (Tr. 246). Symptoms of hypertension were deemed well controlled (Tr. 248). The following month, social worker Beverly S. Osborne opined that Plaintiff did not experience "any thought or mood disorders" (Tr. 290). Parole Board notes from the same month state that Plaintiff had "excellent to outstanding work reports" while in prison and was currently working in the laundry room (Tr. 291). July, 2008 MDOC records show that Plaintiff was taking an over-the-counter pain reliever and Albuterol (Tr. 197).

October, 2008 treating notes state that Plaintiff showed no musculoskeletal abnormalities (Tr. 335). June, 2009 imaging studies of the chest and brain were unremarkable (Tr. 304, 314, 345). In November, 2009, Plaintiff reported that he had experienced leg cramps for the past few days (Tr. 334). A December, 2009 echocardiogram administered in response to reports of chest pain showed a "possible" atrial septal defect of the right ventricle (Tr. 420-421, 460, 465-466). The same month, imaging studies of the lumbar spine were unremarkable except for "[m]ild age related changes" (Tr. 423). Followup studies showed an ejection fraction of 42 percent (Tr. 428). A February, 2010 CT of the lumbar spine was negative for fractures or dislocation (Tr. 393). March, 2010 imaging studies of the chest showed hyper-inflated lung fields but no other abnormalities (Tr. 395). The following month, Plaintiff sought emergency treatment for asthma (Tr. 440). He denied a history of psychiatric problems (Tr. 440). He was given Albuterol and Atrovent treatments before being discharged in stable condition (Tr. 44, 446).

-4-

In October, 2010, Plaintiff sought emergency treatment for chest pain (Tr. 431).  He reported that he did not take any medication "due to financial constraints" (Tr. 431).  He was encouraged to stop smoking (Tr. 432).  An echocardiogram was unremarkable (Tr. 437-438).

## 2.  Non-Treating Sources

### a).  Physical Evaluations

In February, 2009, Siva Sankaran, M.D. examined Plaintiff on behalf of the SSA (Tr. 292-300).  Plaintiff denied chest pain or diabetic neuropathy (Tr. 293).  He reported "one or two" asthma attack a year (Tr. 294).  He stated that his legs cramped after walking half a block (Tr. 294).  He denied back pain except when attempting heavy lifting (Tr. 294).  Plaintiff demonstrated full grip strength and a full range of lumbar spine motion (Tr. 295, 299).  A second consultative examination, performed in December, 2009 found decreased grip strength on the right (Tr. 371).  Plaintiff reported that he used a nebulizer twice a day but that his asthma was well controlled (Tr. 371).  Plaintiff also reported that he had been diagnosed with diabetes four years earlier, but was no longer considered diabetic (Tr. 371).  He exhibited normal ranges of motion (Tr. 377).

The following month, Robert Nelson, M.D. performed a non-examining Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 50 pounds occasionally and 25 frequently; stand, walk, or sit for six hours in an eight-hour workday; and push and pull without limitation (Tr. 380).  Dr. Nelson found that Plaintiff could balance, stoop, kneel and climb ramps and stairs on a frequent basis; and crouch, crawl, and climb ladders, ropes, and scaffolds occasionally (Tr. 381).  Plaintiff's environmental limitations consisted of avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 383).  Dr. Nelson concluded that Plaintiff's allegations of physical limitation contradicted the physical examination results (Tr. 384).

**b).  Mental Evaluations**

In November, 2009, psychologist Nathalie Menendes performed a one-time consultative examination, noting Plaintiff's reports of anxiety, sleep disturbances, back pain, and breathing problems (Tr. 347).  Plaintiff admitted that he previously abused cocaine and had been incarcerated between 1990 and 2008 (Tr. 348).  Dr. Menendes noted that Plaintiff was fully oriented with a good mood, but was unable to perform "serial threes" (Tr. 349).  She cited a May, 2008 MDOC report stating that Plaintiff was functioning in "the 'borderline mentally retarded range'" (Tr. 350).  Dr. Menendes found nonetheless that Plaintiff was "able to understand, retain, and follow simple and one step instructions" and "perform and remember simple, routine, and repetitive tangible tasks" (Tr. 350).  She found Plaintiff incapable of coping "with stress or difficult situations in the work setting" (Tr. 350).  She assigned Plaintiff a GAF of 48[3] with a guarded prognosis (Tr. 350).

The following month, Robert Newhouse, M.D. completed a non-examining Psychiatric Review Technique, finding the presence of organic (borderline intelligence) and anxiety related mental disorders (Tr. 355-356, 360).  Under the "'B' Criteria," Dr. Newhouse found moderate limitations in social functioning and concentration, persistence, or pace (Tr. 365).  Dr. Newhouse noted that Plaintiff had not received inpatient mental health treatment and was not currently taking psychotropic medication (Tr. 367).  Dr. Newhouse also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods; and complete a normal workweek without psychologically based interruptions (Tr. 353).  Dr. Newhouse concluded that the finding of

---

[3]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*" ), 34 (4th ed.2000).

borderline intelligence was contradicted by IQ test results and Plaintiff's ability to hold a supervisory position while incarcerated (Tr. 353).  He found Plaintiff capable of "simple tasks on [a] sustained basis (Tr. 353).

### C.  Vocational Testimony

The ALJ posed the following question to VE Williams taking into account Plaintiff's age, education, and limited work experience:

> [A]ssume a person . . . who is able to perform medium work as defined by the regulations except that he can only occasionally climb, ladders, ropes or scaffolds but can frequently climb ramps or stairs.[4] He can frequently balance, stoop and kneel, but can only occasionally crouch and crawl.  He must avoid concentrated exposure to irritants such as fumes, odors, dusts and gases.  He is limited to simple one and two step tasks on a sustained basis and he must work in small, familiar groups.  Would there be any jobs in the national or regional economy that such a person could perform? (Tr. 52).

The VE responded that given the hypothetical limitations, the individual could perform the medium, unskilled work of a food prep worker (5,400 positions in the regional economy); dishwasher (8,500); and stock handler (2,900) (Tr. 52).  The VE testified that if the same individual were unable to engage in sustained work due to various medical conditions, pain, and psychological problems, all gainful employment would be precluded (Tr. 52-53).  She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 53).  In response to questioning by Plaintiff's

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

attorney, the VE testified that lapses in concentration lasting for 20 percent or more of the workday would also preclude all work (Tr. 53).

### D.  The ALJ's Decision

Citing the medical records, ALJ Sloss found the severe impairments of "degenerative disc disease, degenerative joint disease of the shoulders, peripheral vascular disease, asthma, borderline intellectual functioning, anxiety disorder (not otherwise specified)" but determined that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26).  Citing Dr. Newhouse's conclusions, the ALJ found that Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 27).  The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC") for medium work with the following additional restrictions:

> [C]laimant can occasionally crouch, and crawl, and he can frequently balance, stoop, and kneel.  The claimant must avoid concentrated exposure to fumes, odors, dusts, and gases.  The claimant is limited to simple, one and two-step tasks on a sustained basis, and he must work in small, familiar groups (Tr. 27).

Citing the VE's testimony, the ALJ determined that while Plaintiff had not performed gainful employment in the past 15 years, he could work as a food prep worker, dishwasher, and stock handler (Tr. 32).

The ALJ discounted Plaintiff's allegations of physical and mental limitations, citing December, 2009 MRI findings of the left shoulder showing no evidence of arthritic compromise (Tr. 29).  The ALJ noted that Plaintiff's respiratory condition was well controlled with inhalers, observing that symptoms of COPD were exacerbated by a 30-year pack-a-day smoking habit (Tr. 30).  He cited Dr. Menendes' observation that Plaintiff experienced only mild limitations in memory (Tr. 30).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### The Credibility Determination

Plaintiff argues that the ALJ erred by discounting his claims of mental and physical limitation.  *Plaintiff's Brief* at 6-15, *Docket #17* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).  He contends that the ALJ ought to have credited his testimony that leg cramps and back pain create mobility problems as well as his allegations of memory problems and anxiety  *Id.* at 10 (citing Tr. 46-49).   On a related note, Plaintiff argues that the erroneous rejection of his testimony also invalidates the VE's job findings which he contends were based on an incomplete hypothetical question.  *Id.* at 9.[5]

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically

---

[5]

Plaintiff's brief also contains a recitation of the law pertaining to the analysis of a treating source's disability opinion.  *Plaintiff's Brief* at 12-14.  However, he does not cite any treating source who found him disabled.  My own review of the entire transcript shows that none of the treating sources found him disabled or opined that he experienced greater limitations than those found in the RFC.

acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [6]

Plaintiff does not contest the Step Two finding that degenerative disc disease, joint disease of the shoulders, peripheral vascular disease, asthma, borderline intellectual functioning, and anxiety caused some degree of workplace limitation (Tr. 26).  Rather, he seems to argue that the ALJ improperly downplayed his physical and psychological deficiencies occurring as a result of these conditions.  *Plaintiff's Brief* at 9-10.  He cites treating source evidence supporting his allegations of back pain (Tr. 214), leg cramps (Tr. 294, 334), shoulder pain 413), and chest pain 212, 327) and Dr. Menendes' finding that he experienced borderline intellectual functioning (Tr. 350).  *Id.* at 11-12.

Despite evidence supporting some degree of limitation as a result of these conditions, substantial evidence supports the finding that they did not create greater limitations than those found in the RFC.  The ALJ acknowledged December, 2005 imaging studies showing "moderate to severe degenerative changes at C5-6," but cited subsequent medical records

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

showing that Plaintiff seldom complained of neck pain and demonstrated a full range of motion (Tr. 28 citing 232).  He correctly noted that while Plaintiff complained of lower back and leg pain, imaging studies of the lumbar spine were negative for abnormalities (Tr. 28-29).  The ALJ also noted that Plaintiff admitted that he could walk up to half a mile without difficulty (Tr. 29 citing 369-370).  He cited chest x-rays showing unremarkable results, also observing that "claimant has not helped his case by smoking a pack of cigarettes [each day] for the last thirty years" (Tr. 30).  He noted that symptoms of asthma were nonetheless controlled with use of an inhaler (Tr. 30 citing 242).  As to the alleged psychological and mental limitations, the ALJ cited Dr. Menendes' observations that Plaintiff was logical with only mild limitations in memory, along with her conclusion that mental limitations did not prevent Plaintiff from performing simple work (Tr. 30-31 citing 349-350).

My own review of the transcript shows that the ALJ's credibility determination is also supported by the fact that Plaintiff held a number of jobs and received enthusiastic work performance reviews while in prison  (Tr. 291).  The transcript also shows that Plaintiff exhibited a good mood and appropriate behavior despite his inability to obtain psychotropic medication (Tr. 349-350, 431).   Because the ALJ's credibility determination is well supported, the discretion generally allotted to the credibility determination is appropriate here. *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)(because "an ALJ is charged with the duty of observing a witness's demeanor and credibility," the "findings based on the credibility of the applicant are to be accorded great weight"); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").  For the same reason, Plaintiff's related argument that the ALJ erred by not including all of his professed limitations in the hypothetical question is

unavailing.  the ALJ was not obliged to include properly discounted allegations of limitation in the hypothetical limitations posed to the VE.  *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

In closing, it must be noted that the recommendation to uphold the Commissioner's decision on this application is not intended to trivialize Plaintiff's personal or physical difficulties.  Nonetheless, because the ALJ's determination is within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall

-13-

address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 19, 2013                       s/ R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on
July 19, 2013, electronically and/or by U.S. mail.

                                           s/Michael Williams
                                           Case Manager to the Honorable
                                           R. Steven Whalen